CHEMICAL BANK & TRUST COMPANY, as Executor Under the Will of WALTER REISINGER, Deceased, Plaintiff-Respondent, v. ANHEUSER-BUSCH, INCORPORATED, a Corporation, Defendant-Appellant, and GLORIA REISINGER MILLER, WALTER C. REISINGER, JULIA L. REISINGER, ELIZABETH C. TURNER and the Unknown Heirs, Grantees or Successors of WALTER REISINGER, Deceased, Defendants-Respondents, No. 41576—231 S. W. (2d) 165.

Division One, June 13, 1950.

Motion to Transfer to Banc Overruled, July 10, 1950.

*Shepley, Kroeger, Fisse & Ingamells* and *Harry W. Kroeger* for appellant.

*Salkey & Jones, Wilbur B. Jones* and *Franklin Ferriss* for respondent.

VAN OSDOL, C.—Appeal by defendant Anheuser-Busch, Incorporated, from an order and judgment of the Circuit Court in a proceeding under the provisions of Section 17 of the Uniform Stock Transfer Act, Laws of Missouri, 1943, p. 500, § 5563.17 Mo. R. S. A. 1939.

The action was instituted by plaintiff, Chemical Bank & Trust Company, a New York corporation, executor under the will of Walter Reisinger, deceased. The order of the Circuit Court required defendant, Anheuser-Busch, to issue to plaintiff executor a new certificate in lieu of Certificate No. 33, evidencing shares of the corporate stock of Anheuser-Busch, Incorporated. The Certificate No. 33 had been issued to Walter Reisinger in 1925 and was by him reported to have been lost or destroyed sometime in the year 1932.

In this case, as stated, the plaintiff-respondent executor has sought the relief provided by Section 17, supra, that is, an order requiring the defendant-appellant corporation to issue a new certificate evidencing ownership of corporate stock. The new certificate upon issuance would evidence ownership of stock of the market value of nearly $375,000. The rights incident to the ownership of the stock are lost to the executor without the certificate, and consequently the right to a new certificate the executor has sought to enforce is of money value far in excess of $7500. This court has appellate jurisdiction on the ground of "amount in dispute." Merrill v. Davis, 359 Mo. 1191, 225 S. W. 2d 763; Section 3, Article V, Constitution of Missouri, 1945, Mo. R. S. A. Const. Art. V, § 3.

The order of the Circuit Court directed issuance of the new certificate to plaintiff executor upon the delivery of an executed bond in the penal sum of $750,000 (double the approximate market value of the stock at the time of the trial), the bond being conditioned upon the executor keeping the obligees harmless from and protecting them against all claims by reason or growing out of the loss or destruction of the original Certificate No. 33 or the issuance of a new certificate in lieu thereof, or by reason or growing out of the original Certificate No. 33 remaining outstanding.

Defendant-appellant, Anheuser-Busch, contends that the Section 17 of the Uniform Stock Transfer Act, supra, contemplates a bond protecting the corporation or any person injured from any liability in any amount. Plaintiff-respondent executor contends the penalty of the bond was properly fixed in the stated amount by the Circuit Court in the exercise of its sound discretion.

Does Section 17 of our Uniform Stock Transfer Act, supra, contemplate the giving of a bond in an amount of indemnity or penalty fixed by the court in the exercise of the court's discretion, or does the Section contemplate an "open penalty bond" whereby the obligors indemnify against liability on claims in any amount which may arise by reason of the original certificate remaining outstanding?

This problem has never been studied by this court, and counsel have cited no case decided by the courts of other jurisdictions directly answering the question. We make our own and original interpretation of the statute.

Section 17, supra, provides,

"Where a certificate has been lost or destroyed, a court of competent jurisdiction may order the issue of a new certificate therefor on service of process upon the corporation and on reasonable notice by publication, and in any other way which the court may direct, to all persons interested, and upon satisfactory proof of such loss or destruction and upon the giving of a bond with sufficient surety to be approved by the court to protect the corporation or any person injured by the issue of the new certificate from any liability or expense, which it or they may incur by reason of the original certificate remaining outstanding. The court may also in its discretion order the payment of the corporation's reasonable costs and counsel fees.

"The issue of a new certificate under an order of the court as provided in this section, shall not relieve the corporation from liability in damages to a person to whom the original certificate has been or shall be transferred for value without notice of the proceedings or of the issuance of the new certificate."

At the outset we will inquire into the possible liability of a corporation upon the issuance of a new certificate of stock in lieu of an original certificate which remains outstanding. It has been said that if the owner of a certificate should transfer it, and then, representing that it has been lost or destroyed, induce or compel the corporation to issue to him a new certificate, and afterwards transfer it, the corporation would incur liability on both certificates. Vol. 11, Fletcher, Cyclopedia of Corporations, Perm. Ed., § 5180, p. 399; Keller v. The Eureka Brick Machine Mfg. Co., 43 Mo. App. 84. In this connection, it will be observed that the second paragraph of the Section 17, supra, expressly provides the issuance of a new certificate shall not relieve a corporation from liability in damages to an innocent transferee of an original certificate.

The first paragraph of the Section 17 does not expressly provide the court in its discretion may fix the amount of the bond, nor does the paragraph say the indemnity of the bond may or may not be in any stated amount. But the bond is expressly for the purpose of protecting the corporation or any person injured "from any liability or expense" incurred by reason of the original certificate remaining outstanding. And again referring to the second paragraph of the Section, we again notice the issuance of the new certificate does not relieve the corporation from liability in damages to the innocent transferee of the original certificate. However, the contention of the respondent executor (that the amount of the bond is a discretionary matter) is not entirely without persuasive support.

In the case of Dyer v. Bridge Heights Realty Co., 170 La. 1092, 129 So. 647, a judgment creditor had purchased corporate stock at an execution sale but had not obtained possession of the stock certificates, and was seeking an order requiring the corporation to

issue new certificates. The court made the order conditional upon the giving of a bond in amount equal to the par value of the stock. Upon appeal the judgment creditor was contending that he was not obliged under the law to furnish bond; and that the required bond was excessive inasmuch as the stock, he said, was. actually worth far below its par value. The Supreme Court of Louisiana affirmed the order, being of the opinion the shown facts warranted treating the original certificates as lost, thus, in effect, ruling Section 17 of the Uniform Stock Transfer Act of Louisiana was applicable. The court was of the further opinion that, under the facts, the trial judge correctly required a bond for an amount equal to the par value of the stock; and the court stated a trial court is limited by the Section 17 to requiring a bond *in an amount fixed within its discretion*. However, the corporation had made no contention the protection of the bond in the fixed amount might become inadequate, nor was it insisting that, under Section 17, an "open penalty bond" should have been required.

In the case of Bringardner Lumber Co. v. Crockett's Administratrix, 304 Ky. 324, 200 S. W. 2d 753, the administratrix sought an order requiring the issuance of a new certificate in lieu of one which had been issued to her decedent, but which could not be found among the decedent's personal papers. The order was originally granted conditional upon the execution of a bond in the amount of $4500 (the book value of the stock was "approximately $4000 or $4500"). Being unable to execute the bond, the administratrix procured a subsequent order directing the issuance of a new certificate without bond. The Court of Appeals of Kentucky reversed the latter order with directions that an appropriate bond be required. It was said the statute might work a hardship on those entitled to the corporate stock; but the responsibility for the loss of the certificate could in no way be placed on the corporation, and the corporation had a right to ask for protection under the provisions of the statute. The corporation, appellant, was conceding the right of the administratrix, appellee, to have a new certificate upon the posting of the requisite bond. No question relating to the power of the court to fix the amount of the bond appears to have been raised by the appellant corporation. But elsewhere, it has been written the "amount of the indemnity or penalty of the bond depends largely on the circumstances of the case and the amount or value of the stock involved." Vol. 11, Fletcher, Cyclopedia of Corporations, Perm. Ed., § 5181, at page 404. The Dyer case, supra; and In re Speir, 69 App. Div. 149, 74 N. Y. Supp. 555, are cited in a footnote supporting the text.

In the Speir case the market value of the stock was $20,800, and it was thought by the reviewing court that the penalty of the bond should be at least $25,000. The New York statute, then

in effect, provided a new certificate should be issued upon the depositing of such security or the filing of a bond in such form and with such sureties "as to the court shall appear sufficient" to indemnify any person other than the petitioner who should thereafter be found to be the lawful owner of the certificate lost or destroyed. Stock Corporation Law, § 51, Laws 1892, c. 688. The statute further provided that any person claiming any rights under the certificates alleged to have been lost or destroyed should have recourse to such indemnity, *and that the corporation should be discharged from all liability* upon compliance with the court's order. This again brings to our attention the last paragraph of Section 17 of our Uniform Stock Transfer Act, supra, which, as we have twice stated, in no way relieves the corporation from liability upon the issuance of a new certificate upon court order.

The New York statute, presently in effect, requires the issuance of a new certificate upon the deposit of security or bond to indemnify the corporation against liability. The statute further provides that such "security or bond *shall be in an amount which shall appear to the court sufficient in the circumstances of the case* to protect the interests of any persons to whom the corporation may incur liability." (Our italics.) The issuance of the new certificate under the court's order does not relieve the corporation from liability to a bona fide transferee of the original certificate, but it is provided the corporation "*shall not be liable* to any such transferee *in an amount in excess of the amount of the bond* or the amount of the security required to be deposited." (Our italics.) Personal Property Law, § 178, as amended in 1940, Vol. 40, McKinney's Consolidated Laws of New York, Annotated, c. 41. Although the court is authorized by the legislature of New York to fix the amount of the security or bond to be deposited and the corporation is not relieved from liability by the issuance of the new certificate under the court order, the corporation's liability has been justly limited so as not to exceed the amount of the security or bond required. See also Section 71, Article I, Chapter 65, § 2103, Revised Code of Delaware 1935.

[In the instant case the evidence shows that the Certificate No. 33, when issued to Walter Reisinger in 1925, evidenced ownership of 750 shares of stock of $100 par value per share; and that, by virtue of "stock split" conversions authorized in 1938 and 1947, the 750 shares have become converted into 18,750 shares of par value $4 per share but of the market value of approximately $20 per share at the time of trial in 1949 (and of market value $31 per share in 1947). If it were assumed that, in 1925, the 750 shares were actually worth their par value of $100 per share, the stock to be evidenced by a new certificate is (at the time of trial) worth nearly five times its value in 1925. These facts are merely referred to as tending to show the uncertainty of the amount of possible liability in damages to which the corporation might be subjected.]

In justice it would seem that, if a corporation, in no way at fault, may be subjected to *any* liability in damages to an innocent purchaser of the original certificate, the corporation should be indemnified to the extent of its possible liability, and should not be required by court order to issue a new certificate in lieu of one lost or destroyed upon being indemnified in some limited and possibly lesser amount. In our interpretation or construction of the statute, we suppose the legislature did not contemplate an injustice, and we resolve any obscurity in the language of a statute in favor of an interpretation that is just and fair, especially where, as in the instant case, it appears to us such construction does no violence to settled legal principles, and no plain language of the statute compels a contrary construction. Plum v. Kansas City, 101 Mo. 525, 14 S.W. 657; Betz v. Columbia Tel. Co., 224 Mo. App. 1004, 24 S.W. 2d 224; 50 Am. Jur., Statutes, § 370, pp. 376-379. We rule the trial court erred in approving a bond in any stated or limited amount of indemnity or penalty.

The respondent has urged, and the trial judge was of the opinion that the term "sufficient surety" in the context of the first paragraph of Section 17, supra, was intended to mean sufficient security both in amount of the bond and in solvency of the surety; and that the use of the word "sufficient" is a basis for the ruling it was intended the court in its discretion is to determine "what amount of bond will be sufficient." The trial judge in a memorandum was reminded that when "the solvency of a surety is involved statutes usually contain such words as 'good surety,' to be approved by the Court." In Section 17, it appears the word "sufficient" modifies the word "surety." And no doubt the word "sufficient" when descriptive of a "surety" is a more comprehensive word than "good." The word "sufficient" in a statutory use of the term "sufficient surety or sureties," upon a replevin bond, was held by the Supreme Judicial Court of Maine to contemplate a good (solvent) surety *against whom the obligee of the bond would have an expedient, inexpensive and effectual remedy.* Wilkins v. Dingley, 29 Me. 73. See also Massachusetts Breweries Co. v. Herman, 106 Me. 524, 76 A. 943; Benge v. Foster, Tex. Civ. App., 74 S. W. 2d 542; 40 Words and Phrases, Perm. Ed., Sufficient Sureties, page 620.

The respondent has stressed the last sentence of the first paragraph of Section 17, in which it is provided that the court "may also in its discretion" order the payment of the corporation's reasonable costs and counsel fees. Respondent argues that, by the use of the word "also" and the phrase "in its discretion," the legislature "as clearly as language can be phrased" has vested the court with discretionary power to determine the amount of the bond. We think that the word "also" relates to another or additional order which the court may "also" make and that the use of the phrase "in its

discretion" in such connection only vests the court with discretionary power in making the additional order. In our opinion we are not transgressing the plain language of the Section in ruling that the absence of the use of the phrase "in its discretion," or its equivalent, in the first sentence of the Section tends to indicate the absence of legislative intent that the indemnity of the bond should be in any stated sum to be fixed by the court in its discretion.

It seems to us the evidence tending to show that Walter Reisinger reported the loss or destruction of Certificate No. 33 as early as 1932 or 1933, and had made affidavit that "said certificate was not endorsed in blank or otherwise by him," even in connection with the fact Walter Reisinger was a man of unquestionable integrity, does not aid us in construing the statute; nor does the lapse of time since the disappearance of the certificate, and the evidence that no claim of ownership has been made by another during such time, affect the interpretation of the Section, even though these facts and circumstances might affect a court's action if such court were vested with discretionary power in fixing the amount of indemnity or penalty of a bond.

The Circuit Court's order should be reversed and the cause should be remanded with directions to order the issuance of a new certificate upon the execution of the bond required by Section 17, supra, as we have herein construed the Section.

It is so ordered. *Lozier* and *Aschemeyer, CC.;* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur.