## Carbon Spring Water Ice Company *v.* Hawk, Appellant.

*Practice, C. P.—Case stated—Agreement in writing—Construction.*

Where an agreement in writing is set forth at length in a case stated, the construction of the agreement is for the court; whether or not it is an agreement to lend money is a question of law, not a question of fact, hence it is immaterial that it is not admitted in the case stated to be such an agreement.

*Contract— Consideration— Nudum    pactum —Corporation— Stockholder—*
*Loan.*

Where the stockholders of a corporation agree to pay on their full paid stock a certain per cent thereof in cash into the treasury of the company for the purpose of paying the debts of the company, each stockholder to receive a note of the company for the amount paid by him, such agreement cannot be enforced against a stockholder who refused to pay, where there is nothing in the agreement to indicate time for the repayment of the loans, and such time cannot be implied with certainty from extraneous facts.

Argued Dec. 7, 1904.    Appeal, No. 148, Oct. T., 1904, by defendant, from judgment of C. P. Northampton Co., June T., 1904, No. 10, for plaintiff on case stated in suit of Carbon Spring Water Ice Company v. Byron J. S. Hawk and Henry F. Laros, Executors of Henry E. Hawk, deceased.    Before RICE, P. J., BEAVER, SMITH, PORTER, MORRISON and HENDERSON, JJ.    Reversed.

Case stated on an agreement in writing.    Before SCHUYLER, P. J.

The case stated was as follows :

1. The above-named plaintiff is a corporation chartered under the laws of the state of Pennsylvania for the supply of ice to the public, with a capital stock of $30,000 divided into 300 shares of the par value of $100 each ; of this amount but $23,000 of capital stock was issued.

2. The said plaintiff was indebted on September 1, 1902, in the sum of $15,000 for work, material, etc., in the construction of its ice houses, plant and business.

3. Henry E. Hawk was a stockholder of said plaintiff corporation in his lifetime, and owned twenty shares of the capital stock thereof, which was paid in full.

4. On September 22, 1902, at a meeting duly called for the purpose of providing some method for the payment of the said indebtedness of said company, at which meeting Henry E. Hawk was present, the following resolution was unanimously adopted :

" On motion it was resolved that in the event of Mr. Goldsmith. not obtaining a fifty per cent. mortgage loan on the property all the stockholders of the company be assessed sixty-five per cent. of their holdings, and that they be given the note

of the company for that amount, and that agreement be signed to that effect by all stockholders present."

5. At said meeting all the stockholders of said company entered into the written agreement, a copy of which is hereto attached marked exhibit " A," and made part of this case stated.

6. At a meeting of the directors of said company, held on October 20, 1902, the following resolution was adopted:

" Resolved, That the amount of money which each of the stockholders of the company agreed to pay into the treasury of the company for the purpose of liquidating its indebtedness be called, and that the treasurer is hereby directed to notify the several stockholders to immediately pay their respective amounts to him. Upon the payment of said money, the treasurer shall issue to the stockholders a note or certificate of indebtedness of the company, payable at the option of the company, with interest at the rate of six per cent. per year."

7. All of the subscribers to said written agreement, marked exhibit " A," with the exception of the said Henry E. Hawk, paid the amounts agreed upon by them, as appears by said written agreement, into the treasury of the said Carbon Spring Water Ice Company, and the money so paid was used by the said company in liquidating the said indebtedness of the company. There is still an outstanding indebtedness equal to the amount which the said Henry E. Hawk agreed by said written agreement to pay.

8. Each of said subscribers received from the said company its note for the amount paid by him, as provided in said agreement and resolution.

9. The said Henry E. Hawk did not in his lifetime, nor have his executors since his death, paid the amount agreed by the said Henry E. Hawk to be paid by him as appears by said written agreement, although demand was made therefor.

If the court be of the opinion that said written agreement, marked exhibit " A," is a legal obligation of the estate of Henry E. Hawk to the plaintiff company, then judgment to be entered for the plaintiff company in the sum of $1,300 with interest from December 1, 1902; but if not, then judgment to be entered for the defendant.

The costs to follow the judgment, and either party to have the right of appeal to the Superior Court.

"EXHIBIT 'A.'

"We, the undersigned stockholders of the Carbon Spring Water Ice Company, hereby agree to pay sixty-five per centum of the amount of stock held by each of us into the treasury of the company for the purpose of paying the indebtedness of the company.

"Each stockholder shall receive a note of the company for the amount paid by him.

"The amount set opposite each of our names is the sum we hereby agree to pay.

| | |
|---|---:|
| Philip S. Dyer, | $ 650.00 |
| Aaron Goldsmith, | 650.00 |
| William Laubach, | 975.00 |
| James W. Correll, | 3,250.00 |
| Henry E. Hawk, | 1,300.00 |
| F. P. Meckes, | 3,250.00 |
| Emery Getz, | 650.00 |
| William Getz, | 650.00 |
| P. G. Henning, | 1,300.00 |
| A. D. Chidsey, | 1,300.00 |
| John I. Roth, | 650.00." |

*Error assigned* was in entering judgment for plaintiff on case stated.

*Edward J. Fox*, with him *Clarence Beck*, for appellant, cited: Loux v. Fox, 171 Pa. 68; Schuylkill Co. v. Shoener, 205 Pa. 592; Newport, etc., Railroad Co. v. Seager, 7 Pa. Superior Ct. 268.

*Aaron Goldsmith*, for appellee, cited: Jeannette Bottle Works v. Schall, 13 Pa. Superior Ct. 96; Patterson v. Patterson, 23 Pa. 464; Harlam v. Harlam, 20 Pa. 303; McClymonds v. Stewart, 2 Pa. Superior Ct. 310; Mercer v. Lancaster, 5 Pa. 160; Bidwell v. Pass. Ry. Co., 114 Pa. 535; Brady v. Elliott, 181 Pa. 259; Carr v. Rochester Tumbler Co., 207 Pa. 392; Edinboro Academy v. Robinson, 37 Pa. 210; Shober's Administrators v. Lancaster County Park Assn., 68 Pa. 429; Steamship Co. v. Murphy, 6 Phila. 224; Phipps v. Jones, 20 Pa. 260; Flannery v. Deckert, 13 Pa. 505.

OPINION BY RICE, P. J., October 9, 1905:

We do not regard it important that it is not admitted in the case stated that this was an agreement to lend money to the company. The agreement is in writing and is set forth at length in the case stated. The construction of the paper is for the court. Whether or not it is an agreement to lend is a question of law, not a question of fact: Nellis v. Coleman, 98 Pa. 465. It was signed by all of the stockholders of the company and is in the following words: " We, the undersigned stockholders of the Carbon Spring Water Ice Company, hereby agree to pay sixty-five per centum of the amount of stock held by each of us into the treasury of the company for the purpose of paying the indebtedness of the company. Each stockholder shall receive a note of the company for the amount paid by him. The amount set opposite each of our names is the sum we hereby agree to pay." Great stress is laid on the use of the word " pay " instead of the word " lend." But the nature of the transaction contemplated, whether a gift, or a discharge of an obligation which the stockholder was under, or a loan, is to be determined by looking not only at what the stockholder was to do but also at what the company was to do. Thus viewed the obvious meaning of the paper is that each stockholder was to pay a certain sum of money into the treasury, and was to receive the company's obligation, in the form of a promissory note, for the repayment of the sum thus paid in. This transaction would have been a loan of money to the company, although it was not called by that name in the paper. It is urged by the appellant's counsel that this construction brings the case within the principle upon which the ruling was made in Newport & Sherman Valley R. R. Co. v. Seager, 7 Pa. Superior Ct. 268, that the promise was nudum pactum. In that case, it is true, we construed the subscription to be a promise to lend a certain sum of money to the company at a future day and to take one of the company's bonds as the evidence of and security for the loan. Thus far the cases are parallel. But in the case cited the promise was by a stranger to the company, and nothing appeared on the face of the paper, or otherwise, which showed that the promise was made in consideration of the promises made by the other subscribers, or that it was supported by any other consideration. Here it plainly

appears from the paper, construed in connection with the resolution pursuant to which it was drawn and signed, that each stockholder promised his fellows, in consideration of similar promises by them, to advance money upon loan in order to accomplish an object in which they had a common interest.  If the agreement was to lend money to the company we fail to see upon what theory the company could sue the promisor as for a debt and recover a general and unconditional judgment for the amount he promised to lend.  But the case stated is so worded as to make the question of the right of the plaintiff to recover turn upon the single question whether the paper heretofore quoted " is a legal obligation of the estate of Henry E. Hawk to the plaintiff company."  Possibly, therefore, the question as to the measure of recovery, if the plaintiff is entitled to recover at all, is not before us.  We shall consider the case in that view.  Assuming that these promises of the other stockholders constituted a legal consideration for the promise of Henry E. Hawk, the question arises whether his promise became " a legal obligation to the company," when the company by its directors made the call set forth in the case stated and the others advanced the money subscribed by them.  Possibly he would have been bound if the time for repayment of the loans had been fixed by the agreement or could be implied with certainty from extraneous facts.  But the agreement is silent upon the subject and no such facts are stated.  The company, as such, was not bound to accept the loan and to give its note payable at such time as he might designate, and further agreement between him and the company, or further action of the proper officers, was required to complete the obligation on his part to the company.  And, even if it be assumed that the agreement was, as between the stockholders and the company, an offer to advance money upon the notes of the company, payable at such reasonable time as the board of directors might determine, the case stated fails to show that the offer ever was accepted, or that Henry E. Hawk ever assented to the construction which the board of directors put upon the agreement. He never· became bound to make the loan upon the terms stated in the call, namely, upon " a note or certificate of indebtedness of the company payable at the option of the company."  The counsel for the plaintiff concedes, and Nelson v.

Von Bonnhorst, 29 Pa. 352 is authority for the proposition, that such a note would not create a debt enforceable at law, and we have endeavored to show that Henry E. Hawk had not agreed with his fellows to advance money to the company upon any such terms.   Their agreement contemplated a loan which the company would be under legal obligation to repay, and it is quite clear that it was not within the power of the board of directors to change the agreement.   What we have said relative to the agreement applies as well to his assent to an assessment of his stock, which was full paid, implied from his being present at the stockholders' meeting and agreeing to the resolution then adopted.   His assent was not to an unconditional assessment but to an assessment upon the same terms as those specified in the agreement.   We have carefully examined all the cases cited upon both sides.   None of them rules the question raised in this case.   We are of opinion that the agreement quoted at the outset is not a legal obligation of the estate of Henry E. Hawk, to the company.   Therefore we are constrained to hold that it was error to enter judgment in favor of the plaintiff.

The judgment is reversed and judgment is now entered for the defendants.